**In the Matter of the Arbitrations Between Peter OTTLEY, as President of Local 144 Hotel, Hospital, Nursing Home and Allied Services Union, S.E.I.U., AFL–CIO, Petitioner,**

**and**

**PALM TREE NURSING HOME et al., Respondents.**

**No. 80 Civ. 1383 (KTD).**

United States District Court, S. D. New York.

July 1, 1980.

Vladeck, Elias, Vladeck & Engelhard, P. C., New York City, for petitioner; Robert A. Cantore, New York City, of counsel.

Shea & Gould, New York City, for respondents; Joseph Ferraro, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

The parties before me are far from strangers to this Court. *See, e. g., Greater New York Health Care Facilities Association, Inc. v. Ottley*, 493 F.Supp. 612 (S.D.N.Y. 1980); *Greater New York Health Care Facilities Association, Inc. v. Local 144 Hotel, Hospital, Nursing Home and Allied Services Union*, 492 F.Supp. 578 (S.D.N.Y. 1980).

And, I need not further burden the already tortured record of this litigation by again reciting the facts and circumstances which have brought these parties before this Court once again. It is sufficient to note that the parties are signatories to various collective bargaining agreements which provide, in relevant part, that in exchange for the union's promise not to strike, the Association has agreed to arbitrate any and all disputes arising from the bargaining agreements.

Insofar as the instant dispute is concerned, the primary issue is what contributions are the respondents obligated to make to the pension and welfare funds. The union urges that these funds are on the brink of financial ruin because of management's continued efforts to avoid their financial obligations under the bargaining agreements.

I must note at the outset that having presided over numerous formal and informal discussions between the parties, it is apparent to me that management has attempted to avoid its financial obligations at every turn. Indeed, if management were to focus as long and hard upon their financial obligations as they have upon frustrating the union's efforts to collect these funds, much of the litigation involving these parties would be unnecessary. However, while management has been somewhat less than diligent with respect to its financial obligations, it has been vigilant in its invocation of the no strike clause in the bargaining agreement. Suffice it to say that management should be aware that the union's promise of no strike is the *quid pro quo* for the binding arbitration provision. *Boys Market v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1969).

Under the terms of the bargaining agreements, there are two avenues of arbitration. The first concerns any disputes with respect to the terms of the bargaining agreements and subsequent modifications thereof. In particular, the agreements provide:

> If the parties are in dispute as to any of the terms of the Agreements as they existed on November 30, 1976, and they

are unable to resolve such disputes between themselves, the same shall be submitted to Mr. Schmertz for binding arbitration.

. . . . .

(1) The collective bargaining agreements between the parties, which by their terms expired on March 31, 1978, are extended for a period of three (3) years, from April 1, 1978 to March 31, 1981, except as modified as hereinafter set forth:

. . . . .

(b) by any modification as determined by Eric J. Schmertz, who has been designated as Arbitrator to hear all unresolved issues arising in the negotiations between the parties.

The balance of disputes, under the terms of the agreements, were to be referred to Sidney Wolff for binding arbitration. That is to say, all disputes, save those concerning the terms of the bargaining agreements, are within the province of Sidney Wolff.

In October, 1979, Mr. Schmertz resigned as arbitrator. In his letter of resignation he stated the reasons for his resignation:

As you both know I am chairman of the Labor Cost Review Panel, an adjudicatory forum between the Industry and the State of New York, dealing with medicaid reimbursement rates for increased labor costs. In the year 1978 the Panel dealt only with questions of increased labor costs arising from wage and salary increases under the collective bargaining agreements. Increased costs from improved fringe benefits were excluded. Therefore in 1978 I arbitrated some issues involving fringe benefits which increased the labor costs of Homes and facilities under the collective agreements for that year, but not as to matters which in that year could be submitted to the Labor Cost Review Panel for cost review.

However that is not the situation in 1979. Wages, salaries and increased fringe benefit costs in 1979 (as well as in 1980 and until the expiration of the col-

lective agreements in March of 1981) are proper matters for petitions to the Labor Cost Review Panel. Obviously I could not arbitrate any of those issues and/or questions when their cost impact may later come before me in my capacity as chairman of the Labor Cost Review Panel. I consider that Panel and the enforcement and integrity of its proceedings to be of overriding importance to the Industry, the State and the Union.

. . . . .

Also, unless you jointly ask me to continue as the mediator within one week from this date, please accept this letter as notice of my withdrawal as the mediator in the capacities and on all matters referred to in Items Second and Third above.

The resignation was, by its terms, to be effective immediately.

In January, 1980, the parties were before me with respect to a myriad of arbitration disputes. It was apparent to me then that the void left by the Schmertz resignation had to be filled. Thus, in my opinion dated January 23, I appointed a particularly able attorney, Mr. John Feerick, to replace Mr. Schmertz. I defined Mr. Ferrick's duties to include "reduc[ing] the three contracts between the parties to three, clear documents, understandable to the employees and the operators of the nursing homes and health care facilities."

With this brief factual background, I turn to consider the instant disputes.

The precise issue submitted to Mr. Wolff pursuant to my prior order was to determine whether the individual respondents had fulfilled their financial obligations to the employee benefit funds as required under the bargaining agreements. Mr. Wolff resolved this dispute finding that respondents had not fulfilled their contribution requirements and calculated the deficiency to be, in the aggregate, approximately $1,000,000. This was the amount Mr. Wolff awarded and ordered paid by the individual respondents in his arbitration decision.

The union has now petitioned this Court for an order confirming the Wolff awards. The respondents oppose the petition on the grounds that: Mr. Wolff exceeded his authority under the terms of the arbitration agreement; he disregarded the plain terms of the bargaining agreements in calculating the deficiencies; he incorporated a prior arbitration award of Mr. Schmertz which was tainted by an apparent conflict of interest; and the Wolff award is irrational and incomplete. For these reasons respondents argue that the awards cannot be confirmed.

■ It is now beyond dispute that a court may not review the merits of an arbitration award. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Advance Publications, Inc. v. Newspaper Guild of New York*, 616 F.2d 614, 617–18 (2d Cir. 1980). Where the parties have contracted for the decision of an arbitrator, it is not for the court to superimpose a judicial determination thereon.

■ In *United Steelworkers*, the court noted that although an arbitrator must be afforded some flexibility in deciding disputes, he is confined to the interpretation and application of the collective bargaining agreement. Thus, while he may, in reaching his decision, look for guidance from sources outside the bargaining agreement, the essence of his award must be drawn from the bargaining agreement itself. 363 U.S. at 597, 80 S.Ct. at 1361.

In addition, the United States Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, provides that when judicial confirmation is sought, the court must confirm the award unless one of the enumerated grounds for the vacation or modification of the award exists. 9 U.S.C. § 9. These grounds, insofar as they are relevant, provide that an award *may* be judicially vacated or modified where the arbitrator exceeded his powers (9 U.S.C. § 10) or has issued an award based upon a matter not submitted to him for arbitration (9 U.S.C. § 11).

Applying these standards to the case at bar, it would appear that respondents' arguments are not totally without merit. However, it is equally apparent that their objections are insufficient to invalidate the award.

Respondents' arguments all hinge upon the allegation that Sidney Wolff unilaterally determined issues which dealt exclusively with questions concerning the terms of the bargaining agreement. This, respondents argue, was the province of John Feerick as the successor of Mr. Schmertz.

The complaint everyone has with the present agreements is that they are far from "three, clear documents, understandable to the employees and the operators of the nursing homes and health care facilities." Indeed, this imprecision is the cause of many of the disputes between the parties.

The contract modification issued by Mr. Schmertz on January 18, 1978, provided that "contributions to the various funds were to continue at the 1971 salary levels." During the arbitration before Mr. Wolff, the employers argued that this meant that a formula had to be erected to hold down fund contributions to 1971 levels. Apparently, the 1971 base ceiling was originally imposed to comply with the wage and price controls then in effect. In his award, Mr. Wolff rejected the argument of the employers and found that it amounted to an "unwarranted contract construction" and that the present labor contract should not "be saddled with a compliance formula . . . when the reason for that formula has long since disappeared."

■ The interpretation of a contract is one solely for the arbitrator, *Advance Publications, Inc. v. Newspaper Guild of New York, supra*. Courts are admonished to avoid contract interpretations even when they appear to be matters of law. *Conticommodity Services v. Philipp & Lion*, 613 F.2d 1222 (2d Cir. 1980).

Thus, even if Mr. Wolff had taken his interpretation out of the air, the arguments made by the respondents would be unavailing. But he did not.

The contract clearly requires the Employers to make "Remittance reports" indicating the amount of moneys due to the Funds. The arbitrator found these reports "list current wages and all calculations are based on such payroll." It is apparent that the respondents here treated the contract as requiring exactly what Mr. Wolff found. Few things can better evidence the meaning of a contract than the actions of the parties themselves.

With respect to the rate of contribution to the welfare funds, the same result obtains. Here Mr. Wolff clearly did not exceed his authority in determining the rate of contribution. On the contrary, his determination was based upon a contribution rate established by Mr. Schmertz while he was the contract arbitrator.

There is no question that it was Mr. Schmertz's function to establish the contribution rate. Nor does anyone charge that that rate was somehow improperly computed by Schmertz. Rather, respondents charge that Schmertz's letter of resignation, dated October, 1979, was somehow retroactive in that it invalidated all arbitration awards entered by Mr. Schmertz after January 1, 1979. Respondents reason that since the potential conflict of interest between Schmertz's positions as arbitrator and chairman of the Labor Cost Review Panel first began on January 1, 1979, all awards entered by him after that date were of no force and effect.

I find no support in Schmertz's letter for respondents' argument. Indeed, the resignation purported to be effective immediately—not retroactively.

Moreover, I find nothing in the bargaining agreement which requires the invalidation of the Schmertz awards issued prior to his resignation. While it is true that the particular arbitration award in issue (upon which Wolff relied) has not, to date, been judicially confirmed, nor vacated, there is no requirement in the agreements that Wolff is to interpret the agreements, as modified, only after the modification has been judicially confirmed. The parties agreed to binding arbitration and Schmertz's award binds the parties absent a judicial determination to the contrary.

Finally, when the potential conflict involving Mr. Schmertz was first brought to my attention in January of this year, all the parties, save the City of New York, were willing to reinstate Mr. Schmertz as the contract arbitrator with full knowledge of the potential, and remote, conflict of interest. It was only because the City of New York, through the Corporation Counsel, was unable to waive the potential conflict, that it was necessary to appoint another arbitrator. And, I should add for the record, no one has even suggested—nor could they—that Mr. Schmertz acted as something less than an impartial arbitrator at all times.

Thus, Sidney Wolff's reliance upon the prior award of Eric Schmertz was proper and the fact that Mr. Schmertz thereafter resigned as contract arbitrator does not, in itself, vitiate that award. Respondents' attempts to circumvent this concededly costly award are without merit. Likewise, respondents' objection with respect to the manner by which their delinquencies are to be collected are also without merit.

Accordingly, the arbitration awards are confirmed in all respects.